No. 13,660.

Myers *v.* Anderson.
(56 P. [2d] 37)

Decided March 16, 1936.

Mr. Albert L. Moses, Messrs. Ponsford & Pender, for plaintiff in error.

Mr. RALPH L. CARR, Mr. MERLE M. MARSHALL, Mr. RALPH C. HORTON, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PRIOR to the 14th day of January, 1931, Anderson, defendant in error, operated a dairy about five miles north of Alamosa, Colorado, from which he conducted a wholesale and retail milk business. On a milk route in Alamosa he delivered direct to the consumer. His dairy consisted of approximately fifty cows together with the usual dairy equipment. Myers, plaintiff in error, under the name of Alamosa Creamery Company, manufactured butter, ice cream and other dairy products in the city of Alamosa, but did not retail milk. On January 14, 1931, Anderson sold some of his equipment and his retail milk business and dairy route in Alamosa to Myers for a consideration of $3,500, which was paid. Anderson agreed to and did furnish Myers with a list of his milk and cream customers. This was in accordance with the terms of the written contract of sale wherein Myers agreed to purchase the milk produced by Anderson, not exceeding 160 gallons per day, for a period of five years from the date of the contract and to pay not less than sixty cents nor more than sixty-five cents per pound butter fat, the price to vary according to the market. It appears from the evidence that Anderson delivered, and Myers received, about 75 gallons of milk per day under the terms of the contract until about February 1, 1933. During this period some milk with bad odor and taste was occasionally rejected. It appears that at the time last mentioned, the night milk delivered by Anderson carried a bacteria count greatly in excess of the limit allowed by city ordinance and Myers refused to accept delivery of the night milk; he did however agree to take the morning

milk which was within the permissible bacteria limit. Anderson told Myers that he could not afford to dump the night milk and only deliver the morning milk, whereupon Myers told him that in that case he could cut out all deliveries. On and after February 2nd, 1933, Myers refused to receive deliveries of milk. February 27, Anderson brought this suit for breach of contract for the unexpired term wherein, by a third amended complaint, he sought damages for the loss of the profit he alleged would have accrued to him during the balance of the contract period. The case was tried to a jury which returned a verdict in Anderson's favor in the sum of $5,000. This verdict was set aside, and a new trial granted resulting in a second jury verdict in the sum of $2,530.60 in Anderson's favor. After denial of a motion for a new trial, the court entered judgment against Myers on the verdict which he now seeks to have reversed.

The only point raised by Myers is that the court should have granted his motion for a directed verdict because the evidence was insufficient to support any verdict in Anderson's favor and because the uncontradicted evidence disclosed that Myers was justified in refusing to longer receive milk from Anderson. He justifies his refusal by the contention that the milk did not comply with the contract as to quality and that therefore he could rightfully reject the remaining offered deliveries and terminate the entire contract.

The rights of the parties to this litigation are to be determined by the following, which is paragraph 6 of the contract: ''6. Anderson warrants that all milk to be supplied by him under this agreement shall be pure and unadulterated new milk, with all its cream; he further agrees to keep his herd, barns and equipment for handling milk and cream in a clean and sanitary condition, and agrees to comply with all the laws, rules and regulations of the state of Colorado, and the city of Alamosa, regarding the inspection of his cows and the handling of milk and its by-products.''

Ordinances of the city of Alamosa concerning the inspection and distribution of milk were received in evidence. Such ordinances provided that the bacteria count should not exceed 100,000 bacteria per cubic centimeter. The evidence shows that the city food inspector made a test of the milk delivered to Myers by Anderson January 25 and again on January 29, 1933. The first test showing a count of 240,000 bacteria per cubic centimeter for night milk and 15,000 for the morning milk, the later test showed 120,000 for night milk and 17,000 for the morning milk. The evidence further disclosed some insanitary conditions surrounding Anderson's dairy, especially with reference to the sterilization of the utensils used in the handling and delivery of the milk. At one time Myers was ordered by the city inspector not to receive any more milk from Anderson until certain conditions on Anderson's premises were corrected. These were improved and Myers resumed the acceptance of milk deliveries. Myers testified that he repeatedly endeavored to get Anderson to deliver him better milk. Anderson testified generally that he complied with the requirements and stated that he delivered pure and unadulterated milk to Myers in accordance with the terms of the contract. It is undisputed that the high bacteria count was due to improper methods of handling the milk. Anderson admitted that Myers had frequently complained. In an extended trial all of the facts were submitted to the jury, and we hesitate to disturb its finding, doing so only because we are of the opinion that the court erroneously failed to direct a verdict for defendant upon undisputed facts, which we hold to have been sufficient to justify defendant's breach of the contract.

■ Myers was bound only by one contract and that was to take and pay for pure milk. If at times he accepted an inferior product, he did not thereby waive his right to refuse to take milk which was not up to standard so far as quality was concerned. If this were not so, then contracts requiring an article of specific quality are val-

ueless. The warranty of the kind and quality of milk to be delivered rested upon Anderson. He did not meet the burden by proving that the milk delivered conformed to the contract, offered no evidence as to the quality of the milk last delivered, but rested his case upon the statement that the milk was "pure and unadulterated." It is significant that time would be consumed in ascertaining the bacteria count after delivery was made and accepted. Under the peculiar conditions surrounding the production, handling and delivery of milk, a contract for the purchase thereof is necessarily in the nature of an installment contract. Deliveries are continuing from day to day and the quality of course may vary from time to time depending, as the evidence shows, largely upon sanitary conditions. We do not believe that the rule that a buyer, in accepting installments of milk of an inferior quality, waives his right to refuse further deliveries under a contract, should be here strictly applied. This was an executory contract. Myers was bound for five years, even though it was a bad bargain, if Anderson supplied the quality of milk agreed upon. If Anderson defaulted, as it appears he did, then Myers could rescind the contract as a whole if Anderson persisted on delivering installments of inferior milk. By the contract Myers was not bound to receive and be obligated for milk that later proved to be below the standard of quality for which he had contracted to pay. It would seem that before Anderson can be permitted to recover, he must show a substantial compliance with the contract, and when, as here, while acting under it, he breached one of its most important provisions, namely as to the quality of the milk, then Myers rightfully could rescind and decline to accept any further deliveries even though later the milk on inspection might be found up to the standard required by the contract. In our judgment the uncontradicted evidence discloses that Anderson failed to comply with the terms of the contract; that on account thereof Myers was relieved therefrom; and that the evidence offered by

399

Anderson does not sustain his allegation that he performed his part of the agreement.

The judgment therefore is reversed.

Mr. Chief Justice Campbell and Mr. Justice Burke concur.